UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                                CASE NO. 6:12-bk-15882-KSJ

WSG CORAL SPRINGS, LP,                                CHAPTER 11

        Debtor.
_____/

## CHAPTER 11 CASE MANAGEMENT SUMMARY

**WSG CORAL SPRINGS, LP** ("WSG" or "Debtor"), by and through its undersigned counsel, and pursuant to Administrative Order FLMB 2009-1, hereby files its Chapter 11 Case Management Summary and states as follows:

1. On November 26, 2012 ("Petition Date"), WSG filed its voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") (Doc. No. 1).

2. No trustee has been appointed. WSG continues to operate its business and manage its property as a debtor-in-possession under §§ 1107 and 1108 of the Bankruptcy Code.

**I.**    **Description of the Debtor, its Business, and the Project.**

3. The Debtor is a multi-partner, Delaware limited partnership formed on July 8, 1999, to hold and develop a retail/multi-family development complex consisting of approximately 43.34 acres of real property known as the "Alafaya Trail Property Planned Development," which was developed into a retail area now known as "Waterford Lakes Retail" across from "Waterford Lakes Town Center" in East Orlando, Florida (the "Project").

4. The Project was divided into three (3) phases on various parcels of land. Phase I and Phase II have been completed. Phase I has a combined "Babies 'R' Us" and "Toys 'R' Us" retail

super store, as well as "Bahama Breeze" and "Jason's Deli" restaurants on its parcels. Phase II has a "Dick's Sporting Goods" on its parcel. Upon completion of Phases I and II, the Debtor sold those properties to HM Eight, LLC ("HM8") and HM Four, LLC ("HM4"), respectively.

5. The proceeds from the sale of Phases I and II, approximately $10.2 million, were promptly delivered to Debtor's secured lender on the Project, Branch Banking &Trust Company ("BB&T"), which had previously given the Debtor an $11.7 million loan for the development of the Project.

6. Phase III is vacant conservation land behind the Project required for development of the Project by St. Johns Water Management District ("St. Johns Water") consisting of 28.77 acres. As it did with Phases I and II, the Debtor plans on converting Phase III into developable property (with approximately 7 acres devoted to commercial development of at least 100,000 square feet of commercial space, and the remaining acres for multi-family use) thereby significantly increasing its value.

7. Towards that end, the Debtor has been in the process of negotiating, purchasing, and exchanging conservation mitigation credits with St. Johns Water for over the past six (6) months. Conservation mitigation credits were needed for the entire Project, however, the only remaining parcel is Phase III.

## II.    Reasons for Bankruptcy Filing.

8. The primary reasons the Debtor filed its bankruptcy petition is: (i) after having worked with the Debtor to complete Phases I and II (and after the Debtor remitted the proceeds from the sales of those phases to BB&T), BB&T decided to breach agreements it had with the Debtor and foreclose on Phase III; and (ii) because of the tortious interference of BB&T in a third-party litigation matter involving one of the Debtor's sub-contractors (described below), resolution of that matter has

now been made significantly more difficult and negatively impacted an anticipated settlement to the detriment of the Debtor.

### A. The BB&T Loan and Phases I and II.

9. On or about April 26, 2006, as part of its development of the Project, the Debtor executed and delivered to BB&T's predecessor-in-interest, Colonial Bank, N.A. ("Colonial"), a certain promissory note in the original principal amount of $6,760,000. On or about March 22, 2007, the Debtor executed and delivered to Colonial a certain promissory note in the original principal amount of $240,500. On or about August 27, 2007, the Debtor executed and delivered to Colonial that certain consolidated and restated renewal and future advance promissory note in the principal amount of $11,740,000.

10. By virtue of a mortgage, assignment of leases and rents and security agreement, which was executed by the Debtor in favor of Colonial and recorded on May 9, 2006, in Orange County, Florida, the renewal note is secured by, *inter alia*, a lien against the Property. On August 14, 2009, the FDIC seized the assets of Colonial and substantially all such assets, including the loan documents, were transferred to BB&T.

11. On or about January 3, 2011, BB&T commenced a foreclosure action against, *inter alia*, the Debtor, in Case No. 2011-CA-000033-O in the Circuit Court of the 9th Judicial Circuit, in and for Orange County, Florida (the "Foreclosure Action").

12. On or about July 29, 2011, BB&T, Debtor, Eric D. Sheppard ("Sheppard") and Phillip Wolman ("Wolman") entered into a forbearance stipulation (the "Forbearance Stipulation"). A true and correct copy of the Forbearance Stipulation is attached hereto as **Exhibit "A"**.

13. At all times, the Debtor acted in good faith with BB&T under the Forbearance Agreement, and as long as the Project was being developed and was progressing, despite language in

the Forbearance Agreement to the contrary, the parties agreed to allow interest to accrue. In fact, BB&T had agreed to allow all interest to accrue prior to the execution of the Forbearance Agreement, as long as there was progression in the development of the Project.

14. Phase I was sold and the proceeds of the sale delivered to BB&T in the amount of $5.833 million. Prior to the closing of the sale of Phase I, despite the fact that the Forbearance Agreement called for the collection and payment of interest (and despite the fact that, by agreement of the parties, interest had been accruing since July 2010), BB&T agreed (orally and by course and conduct) not to collect any interest (default or otherwise) on the Loan so long as the Debtor performed under the terms of the Forbearance Agreement (and the Project progressed), which the Debtor did.

15. Then, at the closing of the sale of Phase I all accrued but unpaid interest was due and the Debtor promptly paid it off. After the closing of Phase I, on or about September 2, 2011, BB&T, Debtor, Sheppard and Wolman entered into an Amended Forbearance Stipulation (the "Amended Forbearance Stipulation"). A true and correct copy of the Amended Forbearance Stipulation is attached hereto as **Exhibit "B"**.

16. At all times, the Debtor acted in good faith with BB&T under the Amended Forbearance Agreement, and as long as the Project was being developed and was progressing, despite language in the Amended Forbearance Agreement to the contrary, the parties agreed to allow interest to accrue.

17. Phase II was sold and the proceeds of the sale totaling approximately $4.371 million were delivered to BB&T in or about April 2012. Prior to the closing of the sale of Phase II, despite the fact that the Amended Forbearance Agreement called for the collection and payment of interest, BB&T agreed (orally and by course and conduct) not to collect any interest (default or otherwise) on

the Loan so long as the Debtor performed under the terms of the Amended Forbearance Agreement (and the Project progressed towards development), which the Debtor did. Then, at the closing of the sale of Phase II all accrued but unpaid interest was due and Debtor promptly paid it off.

### B.     Phase III and the Alleged Default.

18.    After the closing of Phase II, on or about April 24, 2012, BB&T, Debtor, Sheppard and Wolman entered into a Second Amended Forbearance Stipulation (the "Second Amended Forbearance Stipulation"). A true and correct copy of the Second Amended Forbearance Stipulation is attached hereto as **Exhibit "C"**.

19.    At all times, the Debtor acted in good faith with BB&T under the Second Amended Forbearance Agreement, and the Debtor continued working on developing Phase III so that it could be sold and the proceeds delivered to BB&T (as Phases I and II were) in late 2013.

20.    Just as it had done with Phases I and II, despite the Second Amended Forbearance Agreement, which called for the collection of interest, BB&T agreed (orally and by course and conduct) not to collect any interest (default or otherwise) on the Loan so long as the Debtor performed under the terms of the Second Amended Forbearance Agreement (and the Project progressed towards development), which the Debtor did.

21.    Upon payment of the $4.371 million from Phase II (which was made in April 2012), it was agreed to by BB&T and the Debtor that all accrued but unpaid interest (and remaining principal) for the development of Phase III would be due by December 2013, and the Debtor would promptly pay it off, as it had done with Phases I and II. However, within thirty (30) days of the closing of Phase II, after receiving approximately $10.2 million from the proceeds of the sale of Phases I and II (on an $11.7 million loan), BB&T falsely declared a "default" under the Second Amended Forbearance Agreement.

22. That is to say, for the first time, despite agreeing (orally and by course and conduct) throughout Phases I and II not to collect any interest on the loan while the forbearance agreements were in effect and the Debtor was complying with their terms, BB&T reneged on its agreement to forbear on the interest and demanded immediate payment of monthly interest, which the Debtor could not do.

23. As a result, in the Foreclosure Action, BB&T claimed that the Debtor, Sheppard and Wolman "defaulted" under the Second Amended Forbearance Stipulation by, *inter alia*, failing to tender payment of $21,539.14 in interest, allegedly due to BB&T on May 6, 2012.

24. Thereafter, on June 29, 2012, the Court, entered an Amended Final Judgment of Foreclosure in the amount of $3,558,844.00 (the "Foreclosure Judgment"), and the foreclosure sale of the Property was subsequently noticed for November 27, 2012. The total amount due and owing under the Foreclosure Judgment as of the Petition Date is alleged to be $3,628,124.77.

25. The Debtor is in on-going negotiations with national tenants to occupy anticipated space in Phase III. However, due to BB&T's improper and unlawful actions, this process has been hindered and has prompted the instant bankruptcy. Additionally, since the alleged "default," BB&T has obstinately refused to sign-off on documents that are necessary to the development (and ultimate completion) of Phase III, *e.g.*, subordination agreements with proposed tenants and other documents required by Orange County to develop the land. These actions have prevented the Debtor from completing its development of Phase III and materially damaged the Debtor.

C. **BB&T's Further Actions Adverse to Debtor.**

26. In addition to the foregoing, the Debtor is a party to a lien foreclosure action filed by a subcontractor on the Project, CDS Sitework & Trucking, Inc. ("CDS"), which is currently pending in Orange County Circuit Court, Case No. 48-2008-CA-16081-O (the "CDS Lawsuit").

27. The dispute in the CDS Lawsuit centers on a lien (the "CDS Lien") and a subcontract with CDS (which had an estimated contract price of nearly $1.7 million), as well as multiple change orders totaling approximately $1,697,228.43, which effectively doubled the contract price. CDS claims it performed the additional work and the Debtor disputes this amount. Nevertheless, due to the CDS Lien, Phase I could not be sold until the lien was satisfied. Consequently, the Debtor obtained refinancing to assist in the closing of Phase I and to "bond-off" the CDS Lien.

28. As a result, on or about August 31, 2011, approximately $2.5 million was placed in escrow with First American Title Insurance ("First American") for the purpose of bonding-off the CDS Lien. A true and correct copy of the Escrow Letter Agreement is attached hereto as **Exhibit "D"** ("Escrow Letter"). Under the Escrow Letter, Bancorp escrowed $2,150,000 with First American for the CDS Lawsuit (the "CDS Escrow Funds") in connection with the refinancing.

29. The parties to the Escrow Letter (Debtor, First American, Bancorp and HM8) also agreed that in consideration of BB&T agreeing to further reduce the release amount due from the Debtor for Phase II by $350,000 – and thereby permit a closing of Bancorp's refinancing of the Project – upon the settlement of the CDS Lawsuit, any CDS Escrow Funds in excess of the final settlement amount with CDS would be released from escrow directly to BB&T and used to pay down the amounts due on or before April 30, 2012 (the Phase II release date) under the Amended Forbearance Agreement.

30. Thereafter, on or about September 1, 2011, First American exercised its discretion and used the entire escrow to bond the CDS Lien off with Platte River Insurance Company ("Platte

River"), as surety. Platte River issued a bond (the "Bond") to release the CDS Lien on behalf of the Debtor, as bond principal, and in favor of CDS, as bond oblige. In connection with the issuance of the Bond, Platte River holds a General Indemnity Agreement and a Security Agreement from both the Debtor and First American.

31. Nearly one year later, in mid-August 2012, CDS took the deposition of Ms. Lina Macki, the corporate representative of Colonial Bank, the predecessor-in-interest to BB&T. During the deposition BB&T's lawyers (who were present, but not involved in the CDS Lawsuit) learned about the Bond with Platte River.

32. Until this time, BB&T claimed it was unaware of the Bond that was posted for the benefit of the Debtor and CDS. As a result, BB&T filed an "Emergency Petition for Preliminary Injunctive Relief and/or Order Preventing Platte River from Distributing Excess Bond Collateral" and alleged that it had information that settlement of other litigation (*i.e.*, the CDS Lawsuit) was "imminent" and therefore it needed the injunction to prevent Platte River from releasing the Bond to anyone other than BB&T. That matter is currently pending in Orange County Circuit Court and is styled: *In Re: The Petition of Branch Banking & Trust Company for Injunctive Relief and/or Order Preventing Platte River Insurance Company (Capital Insurance Companies) From Distributing Excess Bond Collateral*; Case No. 2012-CA-14185.

33. Simply put, BB&T toritously interfered with the anticipated settlement of the CDS Lawsuit by filing an *ex parte* emergency petition for injunctive relief, which prevented Platte River "from disbursing or distributing excess proceeds of/or collateral used to secure" the Bond "to any person or entity other than BB&T." BB&T's injunction bars Platte River from using the Bond (posted by the Debtor) for its contractually entitled right to pay claims relating to the Bond.

34. As a result of BB&T's injunction, CDS pulled out of any further negotiations with the Debtor to resolve the CDS Lawsuit. Further, there was no reason for BB&T to file the injunction. There was no relation between BB&T and the CDS Lawsuit. In fact, BB&T is not a party to the CDS Lawsuit nor is BB&T the named Bond obligee. In addition, the Foreclosure Action referenced above has nothing to do with the CDS Lawsuit (although BB&T is entitled to the excess/residual of any settlement reached with CDS, per the Escrow Letter). Therefore, BB&T was not a proper claimant with regard to the Bond and not entitled to the relief sought by its injunction.

35. BB&T acted tortiously and against the rights of the Debtor by alleging that it had information that settlement of the CDS Lawsuit was "imminent" and that it was entitled to the full Bond. Consequently, the Debtor has been damaged in its negotiations with CDS and the Debtor is being "held hostage" to BB&T (and CDS), and cannot resolve the CDS Lawsuit (because Platte River cannot release the Bond until the BB&T Injunction is dissolved), thereby forcing it to bring the instant action seeking relief under Chapter 11 of the U.S. Bankruptcy Code.

36. The foregoing events have resulted in the Debtor filing the instant bankruptcy action. The Debtor intends to use this Chapter 11 proceeding to allow the Debtor time to reorganize its debts, complete the permitting process with St. Johns Water, develop Phase III, and allow it to pay off BB&T.

### III. Ownership Interests in Debtor and Salaries and Benefits of Officers and Directors During the Year Preceding Bankruptcy

37. The ownership interests of WSG are as follows:

| | | | |
|---|---|---|---|
| | a. | WSG Coral Springs GP, LLC ("GP") | 1% |
| | b. | Eric D. Sheppard | 39.5% |
| | c. | Philip Wolman | 39.5% |

|   |   |   |
|---|---|---|
| d. | Shaquille O'Neal Revocable Trust u/t/a dated January 27, 1995 | 6% |
| e. | RSFGA Waterford, LLC | 4% |
| f. | RSS Waterford, LLC | 10% |

38. The year preceding this bankruptcy, Eric Sheppard, a Limited Partner of WSG and Manager of GP, was paid $0.00 annually.

39. The year preceding this bankruptcy, Philip Wolman, a Limited Partner of WSG and Manager of GP, was paid $0.00 annually

### IV. Amounts Owed to Various Classes of Creditors

40. As of the Petition Date, Debtor is indebted to its secured creditors as follows:

| Secured Lender | Approximate Amount (lien type) |
|---|---|
| BB&T | $3,558,844.00 (mortgage) |
| CDS | $1,697,228.43 (mechanic's lien) |
| Property Taxes | $2,975.96 (tax lien) |

41. The Debtor has approximately $217,000 in non-insider unsecured debt, which is comprised of $50,000 to UP Development for project management services; $50,000 to Todd M. Hoepker, P.A. for legal fees; $20,000 to Holland & Knight, LLP for legal fees; $7,000 to Cupersmith, Wilensky, Steiger, Stempler & Company, LLP for legal fees; $70,000 to Chiodini Associates for architectural services; and $20,000 to Joe Fish for construction labor. The Debtor also has $2,427,036.64 in insider unsecured debt, which is comprised of a $2,427,036.64 loan from HM Eight, LLC for use in obtaining the Bond.

## V. General Description and Approximate Value of Debtor's Current and Fixed Assets

42. As set forth above, the Debtor owns approximately 28.77 acres of real property, which is necessary for the operation of its business. The Debtor is uncertain as to the value of the Property.

## VI. Number of Employees and Amounts of Wages Owed as of Petition Date

43. As of the Petition Date, the Debtor has no employees.

## VII. Anticipated emergency relief to be requested within 14 days from the Petition Date

44. There will be no First-Day Motions filed.

Dated this 17th day of December 2012.

/s/ Jason H. Klein
**R. Scott Shuker, Esq.**
Florida Bar No. 984469
rshuker@lseblaw.com
**Jason H. Klein, Esq.**
Florida Bar No. 0016687
jklein@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
**bknotice@lseblaw.com**
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile: 407-481-5801
*Attorneys for Debtors*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                              CASE NO. 6:12-bk-15119-KSJ

KUBICA, PAUL J. and                                 CHAPTER 11
KUBICA, EMILY K.,

          Debtors.
_____/

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of **CASE SUMMARY** has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: **WSG Coral Springs, LP**, c/o Eric D. Sheppard, PO Box 546918, Miami Beach, FL 33154; **Stephen P. Drobny, Esq.**, Jones Walker, et al., 201 Biscayne Blvd., Suite 2600, Miami, Florida 33131; the **Local Rule 1007-2** Parties-in-interest list, as shown on the matrix attached to the original of this statement filed with the Court; and the **U.S. Trustee**, 400 W. Washington Street, First Floor, Orlando, FL 32801, this 17th day of December, 2012.

                                              /s/ Jason H. Klein
                                              **Jason H. Klein, Esq.**

```
Label Matrix for local noticing      Branch Banking and Trust Company      Florida Dept of Revenue
113A-6                                 c/o Stephen P. Drobny, Esq.          P.O. Box 6668
Case 6:12-bk-15882-KSJ                 Jones Walker                         Tallahassee, FL 32314-6668
Middle District of Florida             201 So. Biscayne Boulevard
Orlando                                Suite 2600
Mon Dec 17 14:24:59 EST 2012           Miami, FL 33131-4341

IRS                                    Todd M. Hoepker, PA                  WSG Coral Springs, LP
Centralized Insolvency Operations      PO Box 3311                          PO Box 546918
P.O. Box 7346                          Orlando, FL 32802-3311               Miami Beach, FL 33181
Philadelphia, PA 19101-7346


United States Bankruptcy Court         Branch Banking & Trust Co            Branch Banking and Trust Company
George C. Young Federal Courthouse     c/o Stephen P Drobny Esq             c/o Stephen P. Drobny, Esq.
400 West Washington Street             Jones Walker                         201 So. Biscayne Boulevard, Suite 2600
Suite 5100                             201 S Biscayne Blvd Ste 2600         Miami, FL 33131-4341
Orlando, FL 32801                      Miami, FL 33131-4341


CDS Sitework & Trucking Inc            CDS Sitework & Trucking Inc          Chiodini Associates
Attn: Pres/Gen Mgr                     c/o Leslie K O'Neal Esq              1401 S Brentwood Blvd #425
12601 Avalong Road                     3906 S Summerlin Ave                 St Louis, MO 63144-1493
Winter Garden, FL 34787-9772           Orlando, FL 32806-6906


Dawn Giebler-Millner Esq               Eric D Sheppard                      Florida Department of Revenue
Greenberg Traurig                      PO Box 546918                        Bankruptcy Unit
450 S Orange Ave #650                  Miami Beach, FL 33154-6918           Post Office Box 6668
Orlando, FL 32801-3311                                                      Tallahassee FL 32314-6668


HM Eight, LLC                          Holland & Knight                     Internal Revenue Service
c/o HM Eight Manager, LLC              Attn: Mging Partner                  Centralized Insolvency Ops
12000 Biscayne Blvd, Ste 508           10 Grove Street                      PO Box 7346
N Miami, FL 33181-2703                 Cherry Hill, NJ 08002-2791           Philadelphia, PA 19101-7346


Internal Revenue Service               James Shepard Esq                    Jason Block Esq
Post Office Box 7346                   145 Middle Street Ste 1121           Berman Rennert
Philadelphia PA 19101-7346             Lake Mary, FL 32746-3594             100 SE 2d Street, Ste 2900
                                                                            Miami, FL 33131-2119


Jason R Block, Esq                     Jim McCrae Esq                       Joe Fish
a/f WSG Coral Springs                  1349 International Pkwy S            1045 Tulloss Road
Bennan Rennert                         Suite 2421                           Franklin, TN 37067-8113
100 SE 2nd St, Suite 2900              Lake Mary, FL 32746-1400
Miami, FL 33131-2119


Kenneth Huto Esq                       Leslie K O'Neal Esq                  Michael Crosbie Esq
842 S Missouri Ave                     3906 S Summerlin Ave                 Michelle Sullivan Esq
Lakeland, FL 33815-4740                Orlando, FL 32806-6906               300 S Orange Ave Ste 1000
                                                                            Orlando, FL 32801-5403


Michael Krekstein Esq                  Orange County Tax Collector          Orange Cty Tax Collector
Fineman, Krekstein & Harris            Attn: Earl K. Wood                   PO Box 2551
1735 Market Street, Ste 600            Post Office Box 2551                 Orlando, FL 32802-2551
Philadelphia, PA 19103-7513            Orlando FL 32802-2551
```

```
Philip Wolman                      Platte River Ins Company          RSPGA Waterford
PO Box 546918                      c/o Julie Fox Esq                 PO Box 546918
Miami Beach, FL 33154-6918         5020 W Cypress St                 Miami Beach, FL 33154-6918
                                   Tampa, FL 33607-3842


RSS Waterford                      SO Revocable Trust                St Johns Water Mgmt District
PO Box 546918                      PO Box 546918                     Office of General Counsel
Miami Beach, FL 33154-6918         Miami Beach, FL 33154-6918        4049 Reid Street
                                                                     Palatka, FL 32177-2571


Stuart Levine Esq                  Todd Hoepker Esq                  Todd M. Hoepker, PA
Thomas Valentine Esq               Todd Hoepker PA                   c/o Todd M. Hoepker, Esquire
601 Bayshore Blvd Ste 720          55 E Pine Street                  PO Box 3311
Tampa, FL 33606-2760               Orlando, FL 32801-2617            Orlando, FL 32802-3311


Travis Fulford Esq                 UP Development                    United States Trustee - ORL
505 Maitland Ave Ste 1000          c/o Scott Fish                    Office of the United States Trustee
Altamonte Springs, FL 32701-6306   1045 Tullose Road                 George C Young Federal Building
                                   Franklin, TN 37067-8113           400 West Washington Street, Suite 1100
                                                                     Orlando, FL 32801


WSG Coral Springs GP, LLC          William Asma Esq                  Jason H Klein
c/o WSG Development Co             884 S Dillard Street              Latham Shuker Eden & Beaudine LLP
PO Box 546918                      Winter Garden, FL 34787-3910      P.O. Box 3353
Miami Beach, FL 33154-6918                                           Orlando, FL 32802-3353


R Scott Shuker                     End of Label Matrix
Latham Shuker Eden & Beaudine LLP  Mailable recipients    45
Post Office Box 3353               Bypassed recipients     0
Orlando, FL 32802-3353             Total                  45
```