**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**


**In re:**                                          **CASE NO. 6:12-bk-15882-KSJ**

**WSG CORAL SPRINGS, LP,**              **CHAPTER 11**

                          **Debtor.**
_____/


**PLAN OF REORGANIZATION FOR**
**FOR WSG CORAL SPRINGS, LP**




COUNSEL FOR DEBTOR

R. SCOTT SHUKER, ESQ.
JASON H. KLEIN, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
111 N. MAGNOLIA AVENUE, SUITE 1400
ORLANDO, FLORIDA 32801




March 22, 2013

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

In re:                                           **CASE NO. 6:12-bk-15882-KSJ**

**WSG CORAL SPRINGS, LP,**                       **CHAPTER 11**

                        **Debtor.**
_____/

## PLAN OF REORGANIZATION FOR
## WSG CORAL SPRINGS, LP

**WSG CORAL SPRINGS, LP** (the "Debtor"), by and through its undersigned counsel hereby proposes the following Plan of Reorganization (the "Plan"), pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

## ARTICLE I - DEFINITIONS

1.      **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's Estate and operating the Debtor's business, including wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2.      **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.      **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4.      **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

5.      **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001

or a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtor with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

6.      **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code, to the extent such Priority Claim is or becomes an Allowed Claim.

7.      **Allowed Secured Claim** means a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided herein.

8.      **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

9.      **Assets** means each and every item of Property of the Estate and every interest of the Debtor and its Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, including accounts receivable, contract rights, or other rights, including without limitation rights to payment, contribution or distribution from Insiders, whether due prior or subsequent to the Petition Date; (d) all of the Debtor's books, records, and privileges; and (e) all Executory Contracts, and other contracts, agreements, licenses, and leases.

10.     **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan.

11.     **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

12.     **Bankruptcy Case** means the Debtor's bankruptcy case that is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code, case number 6:12-bk-15882-KSJ.

13.     **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., including any amendments thereto, in effect during the Bankruptcy Cases.

14.     **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

15.     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

16.     **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

17.     **BB&T** means Branch Banking and Trust Company.

18.     **Bid Rate** means the applicable rate of interest at which the relevant Holder of a tax certificate purchased such tax certificate.

19.     **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

20.     **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

21.     **Causes of Action** means any and all of the Estate's and the Debtor's actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtor, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtor not otherwise approved by the Bankruptcy Court; *provided, however*, that when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court.  A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

The Causes of Action specifically include any Causes of Action against BB&T and Mr. Scott Fish and any of his related entities.

22.     **Claim** means "claim" as defined in Bankruptcy Code § 101(5).

23.     **Class** means any Class into which Claims or Interests are classified pursuant to the Plan.

24.     **Class 1 Claim, Class 2 Claim, Class 3 Claim,** etc., shall mean the specific Class into which Claims or Interests are classified pursuant to Article III of the Plan.

25.     **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129.

26.     **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

27.     **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

28.     **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

29.     **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

30.     **Contstruction Loan** means the loan obtained to commence development and vertical construction on Phase III.

31.     **Contribution** means the sum of Twenty-Five Thousand and No Cents ($25,000.00).

32.     **Creditor** means "Creditor" as defined in Bankruptcy Code § 101(1).

33.     **Debtor** means WSG Coral Springs, LP.

34.     **DIP Lender** means Wildstein Investments, Inc.

35.     **DIP Lender's Superpriority Claim** means the superpriority administrative claim the Debtor is giving the DIP Lender under section 364(c)(1) of the Bankruptcy Code and a priming lien on the Phase III Property under section 364(d) of the Bankruptcy Code.

36.     **DIP Loan** means a commercial loan that the Debtor will enter as borrower with Wildstein Investments, Inc., as lender, in an amount up to $1,000,000.00, which the Debtor will use to purchase conservation easement mitigation credits to allow the Debtor to fully develop its Phase III Property.

37.     **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

38.     **Disclosure Statement** means the Disclosure Statement describing the Plan and approved for distribution by the Bankruptcy Court pursuant to Bankruptcy Code § 1125 together with any amendments or modifications thereto.

39.     **Disputed Claim** means every Claim, or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

40.     **Distribution** means a distribution to the Holders of Allowed Claims.

41.     **Effective Date** means the date upon which this Plan becomes effective and the Debtor starts making Distributions, as set forth in Article VIII herein, but in no event less than thirty (30) days after the Confirmation Date.

42.     **Estate** means the bankruptcy estate of the Debtor created under Bankruptcy Code § 541.

43.     **Equity Interests** or **Interests** means any and all issued or authorized membership interests, common stock, stock options and warrants in the Debtor.

44. **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

45. **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Cases after the Estate has been fully administered.

46. **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

47. **Fiscal Year** means the fiscal year of the Debtor, which commences on the first day of January and concludes on the final day of December in the following calendar year.

48. **Holder** means the holder of a Claim or Interest, as applicable.

49. **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124 .

50. **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

51. **Interest** means an issued or authorized outstanding membership interest, a warrant or warrants for the issuance of such membership interests, or any other equity instruments in the Debtor.

52. **Lien** means any mortgage, lien, charge, security interest, encumbrance, or other security device of like kind affecting any asset or property of the Debtor, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtor or any other party with standing to bring such a challenge.

53.     **New Value** means the Contribution and Funds necessary to make Plan Payments until such time as lease income is sufficient to pay all Plan Payments.

54.     **Person** means "person" as defined in Bankruptcy Code § 101(41).

55.     **Petition Date** means November 26, 2012, the date on which Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

56.     **Phase I** means the developed parcel(s) of land at the Project that has a combined "Babies 'R' Us" and "Toys 'R' Us" retail super store, as well as "Bahama Breeze" and "Jason's Deli" restaurants on its parcels.

57.     **Phase II** means the developed parcel(s) of land at the Project that has a "Dick's Sporting Goods" on its parcel.  Phases I and II were sold to HM Eight, LLC ("HM8") and HM Four, LLC ("HM4"), respectively.

58.     **Phase III** means the vacant conservation land behind the Project required for development of the Project by St. Johns Water Management District ("St. Johns Water") consisting of 28.77 acres.

59.     **Plan** means this Chapter 11 Plan of liquidation, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

60.     **Plan Payments** means payments made by the Debtor pursuant to the terms of the Plan.

61.     **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

62.     **Principals** shall refer to Eric D. Sheppard and Phillip Wolman.

63.     **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

64.    **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

65.    **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

66.    ***Pro rata*** means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

67.    **Professional** means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

68.    **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

69.    **Project** means the retail/multi-family development complex consisting of approximately 43.34 acres of real property known as the "Alafaya Trail Property Planned Development," which was developed into a retail area now known as "Waterford Lakes Retail" across from "Waterford Lakes Town Center" in East Orlando, Florida.

70.    **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

71.    **Property** means Tracts A & B Conservation Easement, totaling 28.77 acres located at N. Alafaya Trail, Orlando, Florida, (also known as **Phase III**) and 19.96 acres located at N. Forsyth Road, Orlando, Florida.

72.    **Property of the Estate** means "property of the estate" as defined in Bankruptcy Code § 541.

73.    **Property Tax Administrative Claim** means every Claim of any state or local governmental unit that is an Administrative Claim for unpaid property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and every prorated portion thereof arising on and after the Petition Date until the Effective Date.  Allowed Property Tax Administrative Claims will be classified and paid under the Plan as the Plan provides for Administrative Claims.

74.    **Reorganized Debtor** means the Debtor upon the Effective Date of the Plan.  The member and the manager of the Reorganized Debtor shall be as set forth in the Plan.

75.    **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

76.    **Secured Claim** means a Claim secured by a Lien against Property of the Estate to the extent of the value of any interest in such Property of the Estate securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Bankruptcy Code § 553, in either case as determined pursuant to Bankruptcy Code § 506(a).

77.    **Secured Tax Claim** means a Claim secured by a statutory lien on Assets for unpaid taxes on such Assets.

78.     **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

79.     **Statutory Rate** shall mean the interest rate allowed to be charged pursuant to applicable state law on unpaid *ad valorem* taxes.

80.     **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of Bankruptcy Code § 1124.

81.     **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

82.     **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. seq*. and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated under Articles III-V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.      <u>Secured Claims</u>.

      1.      <u>Class 1 - Allowed Secured Claim of Orange County Tax Collector – 2010 Taxes on N. Forsyth Property</u>.
Class 1 consists of the Allowed Secured Claims of the Orange County Tax Collector, Scott Randolph, for unpaid 2010 real property and tangible property taxes secured by a statutory lien on property located on N. Forsyth, Orlando, Florida, Parcel ID 10-22-30-0000-00-013 (the "Forsyth Property").  Class 1 is Impaired.

2.      <u>Class 2 - Allowed Secured Claim of Orange County Tax Collector – 2011 Taxes on the Forsyth Property</u>.

Class 2 consists of the Allowed Secured Claims of the Orange County Tax Collector, Scott Randolph, for unpaid 2011 real property and tangible property taxes secured by a statutory lien on property located on the Forsyth Property.  Class 2 is Impaired.

3.      <u>Class 3 - Allowed Secured Claim of Orange County Tax Collector – 2012 Taxes on the Forsyth Property</u>.

Class 3 consists of the Allowed Secured Claims of the Orange County Tax Collector, Scott Randolph, for unpaid 2012 real property and tangible property taxes secured by statutory liens on property located on the Forsyth Property.  Class 3 is Impaired.

4.      <u>Class 4 - Allowed Secured Claim of Orange County Tax Collector – 2012 Tract A Property</u>.

Class 4 consists of the Allowed Secured Claim of the Orange County Tax Collector, Scott Randolph, for unpaid 2012 real property and tangible property taxes secured by a statutory lien on property located on Tract A at The Shoppes at Alafaya Trail, Orlando, Florida, Parcel ID 22-22-31-8030-0001 ("Tract A Property").  Class 4 is Impaired.

5.      <u>Class 5 - Allowed Secured Claim of Orange County Tax Collector – 2012 Tract B Property</u>.

Class 5 consists of the Allowed Secured Claim of the Orange County Tax Collector, Scott Randolph, for unpaid 2012 real property and tangible property taxes secured by a statutory lien on property located on Tract B at The Shoppes at Alafaya Trail, Orlando, Florida, Parcel ID 22-22-31-8030-0002 ("Tract B Property").  Class 5 is Impaired.

6.      Class 6 – Allowed Secured Claim of BB&T.

Class 6 consists of the Allowed Secured Claim of BB&T that is secured by a first priority mortgage lien on the 28.77 acres of conservation easement property in Phase III located at N. Alafaya Trail, Orlando, Florida, Parcel ID 22-22-31-8030-00-001 and 002 (the "Phase III Property").  Class 6 is Impaired.

7.      Class 7 – Allowed Secured Claim of CDS Site Work & Trucking.

Class 7 consists of the Allowed Secured Claim of CDS Sitework & Trucking, Inc. ("CDS") in the amount of Two Million Two Hundred Thousand and No Cents ($2,200,000.00).  The Class 7 Claim was secured by a judgment lien on Tracts A and B (Phases I and II) located at N. Alafaya Trail, Orlando, Florida, Parcel ID 22-22-31-8030-00-001 and 002 ("Tracts A and B). Class 7 is Unimpaired.

B.      Unsecured Claims.

1.      Class 8 – Allowed Unsecured Claims.

Class 8 consists of all Allowed Unsecured Claims.  The Debtor estimates the total amount of Class 8 Claims is approximately $2,644,036.64.  Class 8 shall not consist of any Allowed Unsecured Claim of BB&T unless the Bankruptcy Court determines such Unsecured Claim by BB&T may not be equitably subordinated pursuant to § 510 of the Code.  Class 8 is Impaired.

2.      Class 9 – Subordinated Unsecured Claim of BB&T.

Class 9 consists of the Allowed Unsecured Claim of BB&T that has been equitably subordinated by the Court under § 510(c) of the Bankruptcy Code.  Class 9 is Impaired.

C.    Equity Interests.

1.    Class 10 – Equity in the Debtor.

Class 10 consists of 100% of the partnership interests in the Debtor.  Class 10 is Unimpaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS.

A.    DIP Lender's Superpriority Claim.

The DIP Lender's claim will be paid in full upon the Reorganized Debtor obtaining the Construction Loan, at which time the outstanding balance of the loan will be paid in full along with outstanding accrued interest of 8% per annum..

B.    Administrative Expense Claims.

Holders of all Allowed Administrative Expense Claims of the Debtor shall be paid in full on the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. However, nothing in this provision of the Plan shall preclude the Reorganized Debtor from paying any holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim Holder consents to different payment terms.  The Allowed Administrative Claims shall be paid from cash on hand.  The Debtor estimates Administrative Claims to be approximately $50,000.00.

C.    Priority Tax Claims.

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall be paid in full within thirty (30) days of the Effective Date.  The Debtor estimates the amount of Allowed Priority Tax Claims is approximately $0.00.

**ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS.**

There are two (2) classes of Unimpaired Classes as follows:

A.      Class 7 – Allowed Secured Claim of CDS Site Work & Trucking.

In full satisfaction of its Class 7 Claim, CDS was paid $2,200,000.00 from an insurance bond issued by Platte River.

B.      Class 10 - Equity Interests in the Debtor.

One the Effective Date, all Class 10 Interests shall be retained by the Holders of such Interests in the same percentage ownership existing as of the Petition Date.  The Holders of Class 10 shall also contribute the New Value.

**ARTICLE V – TREATMENT OF IMPAIRED CLASSES.**

A.      Determination of Allowed Amounts.

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim.  In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to Article VIII, Section F, of this Plan, and other applicable law.

There are eight (8) Classes of Claims and Interests that are Impaired.  Treatment for these classes is as follows:

B.      Secured Claims.

1.      Class 1 - Allowed Secured Claim of Orange County Tax Collector – 2010 Taxes on N. Forsyth Property.

In full satisfaction of its Class 1 Claims, the Orange County Tax Collector shall retain its lien on the Forsyth Property, and shall receive equal quarterly payments of principal and interest beginning on the Effective Date and ending on the date that is 60 months from the Petition Date, which payments shall total the Class 1 Claim amount plus interest, which shall accrue and be paid at the Statutory Rate; *provided, however*, that the Debtor may prepay the Class 1 Claim in part or in full with no penalty at any time.

2.      Class 2 - Allowed Secured Claim of Orange County Tax Collector – 2011 Taxes on the Forsyth Property.

In full satisfaction of its Class 2 Claims, the Orange County Tax Collector shall retain its liens on the Forsyth Property, and shall receive equal quarterly payments of principal and interest beginning on the Effective Date and ending on the date that is 60 months from the Petition Date, which payments shall total the Class 2 Claim amount plus interest, which shall accrue and be paid at the Statutory Rate; *provided, however*, that the Debtor may prepay the Class 2 Claim in part or in full with no penalty at any time.

3.      Class 3 - Allowed Secured Claim of Orange County Tax Collector – 2012 Taxes on the Forsyth Property.

In full satisfaction of its Class 3 Claims, the Orange County Tax Collector shall retain its liens on the Forsyth Property, and shall receive equal quarterly payments of principal and interest beginning on the Effective Date and ending on the date that is 60 months from the

Petition Date, which payments shall total the Class 3 Claim amount plus interest, which shall accrue and be paid at the Statutory Rate; *provided, however*, that the Debtor may prepay the Class 3 Claim in part or in full with no penalty at any time.

4.      Class 4 - Allowed Secured Claim of Orange County Tax Collector –  2012 Tract A Property.

In full satisfaction of its Class 4 Claim, the Orange County Tax Collector shall retain its lien on the Tract A Property, and shall receive equal quarterly payments of principal and interest beginning on the Effective Date and ending on the date that is 60 months from the Petition Date, which payments shall total the Class 2 Claim amount plus interest, which shall accrue and be paid at the Statutory Rate; *provided, however*, that the Debtor may prepay the Class 4 Claim in part or in full with no penalty at any time.

5.      Class 5 - Allowed Secured Claim of Orange County Tax Collector – 2012 Tract B Property.

In full satisfaction of its Class 5 Claim, the Orange County Tax Collector shall

retain its lien on the Tract B Property, and shall receive equal quarterly payments of principal and interest beginning on the Effective Date and ending on the date that is 60 months from the Petition Date, which payments shall total the Class 5 Claim amount plus interest, which shall accrue and be paid at the Statutory Rate; *provided, however*, that the Debtor may prepay the Class 5 Claim in part or in full with no penalty at any time.

6.      Class 6 – Allowed Secured Claim of BB&T.

In full satisfaction of the Allowed Class 6 Secured Claim, BB&T shall retain its lien on the Phase III Property and be paid through monthly payments of principal and interest based on a 30-year amortization with a four percent (4.0%) fixed rate of interest and a final maturity

date five (5) years from the Effective Date.  Any difference between the amount of the Allowed

Secured Class 6 Claim and BB&T's Proof of Claim shall be deemed an Unsecured Claim, pursuant

to 11 U.S.C. § 506, and shall be treated as a Class 9 Subordinated Claim and paid accordingly.

Debtors will file a Motion to Value concerning the Phase III Property (pursuant to § 506 of the

Bankruptcy Code), and the Court will determine the value of the Phase III Property.  Funding of

payments for the Allowed Secured Claim of BB&T will derive from rent from future tenants for use

of the developed Phase III Property and New Value.

      C.    <u>Unsecured Claims</u>.

      1.    <u>Class 8 – Allowed Unsecured Claims</u>.

      In full satisfaction of their Allowed Class 8 Unsecured Claims, Holders of

Class 8 Claims shall be paid in full receive:  (a) a *pro rata* share of the Contribution; and (b) the Net

Proceeds of the Causes of Action.

      2.    <u>Class 9 – Subordinated Unsecured Claim of BB&T</u>.

      In full satisfaction of the Allowed Class 9 Claim, the Holder of such Claim

shall receive the Net Proceeds of the Causes of Action after Class 8 has been paid in full.

**<u>ARTICLE VI – UNEXPIRED LEASES AND EXECUTORY CONTRACTS</u>**.

      The Debtor shall have through and including the Effective Date within which to assume or

reject any unexpired lease or executor contract.  In the event any such unexpired lease or executory

contract is not rejected or subject to a filed motion to reject by such date, then the Debtor shall be

deemed to assume all such existing leases and executory contracts on the Effective Date.  It is the

Debtor's position that the executory contracts listed in Schedule G - Executory Contracts and

Unexpired Leases, filed pursuant to Rule 1007, are the only executory contracts to which the Debtor

was a party on the Petition Date.

**ARTICLE VII – MEANS OF IMPLEMENTATION.**

        A.        Business Operations and Cash Flow.

        The Reorganized Debtor will continue to manage its operations and market the Project to prospective tenants.

        B.        Funds Generated During Chapter 11.

        Funds generated from operations until the Effective Date will be used for Plan Payments and for general operations; however, Debtor's cash on hand as of Confirmation shall be available for Administrative Expenses.  The Reorganized Debtor shall have the sole authority, in its discretion, to adjudicate any Chapter 5 Causes of Action for the benefit of Class 8 Claim Holders.

        C.        Management and Control of Reorganized Debtor.

        The operations of the Reorganized Debtor shall continue to be overseen by the Debtor's current manager, Eric Sheppard.  The powers and compensation of the manager(s) of the Reorganized Debtor shall be substantially the same as the manager's powers as of the Petition Date.

        D.        Procedures For Resolving Disputed Claims.

        1.        Prosecution of Objections to Claims.

        Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided herein, the Debtor or Reorganized Debtor shall have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of this Plan.  All objections commenced prior to the Confirmation Date shall be finished by the Reorganized Debtor.

Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Confirmation Date.

Nothing within this Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that any Debtor had immediately prior to the commencement of the Bankruptcy Case against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under this Plan.  Except as set forth herein, upon Confirmation, the Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that any Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

2.    Estimation of Claims.

The Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy

Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

3.        <u>Cumulative Remedies</u>.

All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

4.        <u>Payments and Distributions on Disputed Claims</u>.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid by the Reorganized Debtor such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question.  Except as otherwise provided herein, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order.  Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided herein, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

5.    <u>Allowance of Claims and Interests</u>.

(i)    <u>Disallowance of Claims</u>.  All Claims held by Persons against whom the Debtor has obtained a Final Order establishing liability for a cause of action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code ("Causes of Action") shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Person have been settled or resolved by a Final Order and all sums due the Debtor by that Person are turned over to the Debtor.  Debtor reserves and shall have the exclusive right and authority to bring any Causes of Action.

(ii)    <u>Allowance of Claims</u>.

Except as expressly provided herein, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Case, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim or Equity Interest.

6.    <u>Controversy Concerning Impairment</u>.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

## ARTICLE VIII – MISCELLANEOUS.

A.      Authority to Effectuate the Plan.

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for herein will be deemed to be authorized and approved without further approval from the Bankruptcy Court.  The Confirmation Order will act as an order modifying the Debtor's operating agreement, if so required, such that the provisions of this Plan can be effectuated.  The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

B.      Post-Confirmation Status Report.

Within 120 days of the entry of the Confirmation Order, the Debtor will file a status report with the Bankruptcy Court attaching a detailed accounting of all payments made under the Plan and explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation.  The Bankruptcy Court may schedule subsequent status conferences in its discretion.

C.      Injunction.

1.      Recipients

Mr. Eric Sheppard; Mr. Jeffrey Graff and Mr. Phillip Wolman ("Guarantors"). The Guarantors have been involved with the acquisition and development of the Debtor's property and the Project and business operations since its inception.  As a consequence of his intricate involvement with the Debtor's business development and financial affairs, Guarantors are obligated on numerous direct, limited, or conditional guarantees of the Debtor's financial obligations, and as a

result is liable under those contractual undertakings as accommodation parties for the Debtor or as direct obligations on account of credit obtained for the benefit of the Debtor on substantially all of the Debtor's business and operational indebtedness.    Additionally, Guarantors risk exposure to potential litigation related to claims arising from the Debtor's operations.    Guarantors estimate their potential exposure on contractual recourse liability for the Debtor's business obligations and other Debtor related noncontractual claims to exceeds $5,000,000.00.

The Debtor believes that Guarantors have contributed significant value to the Debtor's estate, and will continue to contribute value to the Reorganized Debtor.    On the Effective Date of the Plan, Guarantors will also waive their direct or indirect Claims against the Debtor in full. In consideration of the substantial contributions made and to be made by Guarantor, the Plan contemplates the granting of broad, conditional third-party injunctions of pursuit against Guarantor of claims arising out of and deriving from the business operations and financial affairs of the Debtor.

2.    <u>Conditional Injunction</u>

The Plan is premised upon the injunctions contained below.    Debtor asserts the injunction is being given as consideration for the accommodations provided by Guarantors under the Plan and are fair consideration for property contributed and valuable services.    The Debtor further believes that unless the settlement is binding on all parties through confirmation of the Plan, protracted and costly litigation would ensue, distributions to Creditors would be substantially delayed and the Debtor would not be restructured and reorganized.

Except as expressly provided in the Plan or to otherwise enforce the terms of the Plan, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim, other debt or liability, an Interest, or other right of an equity security that is impaired or terminated

pursuant to the terms of the Plan, to the fullest extent permitted by applicable law, are enjoined from taking any of the following actions, as long as Reorganized Debtor and the Guarantors are not in default of any obligation under the Plan or any agreements contemplated by the Plan and except as specifically provided for in the Plan, on account of any such impaired or terminated Claims, debts or liabilities, Interests or rights:  (i) commencing or continuing in any manner any action or proceeding Guarantors, or their property interests, other than to enforce any right pursuant to the Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against Guarantors, or their property interests, other than as permitted pursuant to (i) above; (iii) creating, perfecting, or enforcing any lien or encumbrance against Guarantors, or their property interests; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to Guarantors; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

From and after the Confirmation Date, the Injunctions described Article VIII in the Plan and Article V herein shall become effective, and all Holders of Claims and Interests shall be enjoined from commencing or continuing any of the actions detailed herein for so long as Reorganized Debtor and Guarantors remain in compliance with the Plan or any agreements contemplated by the Plan and except as specifically provided for in the Plan.

D.      <u>Preservation, Prosecution and Defense of Causes of Action</u>.

Except as set forth herein, upon Confirmation, the Debtor and the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, including all pending adversary proceedings, including the Avoidance Action, whether or not such causes of action have been commenced as of the Effective Date, and shall be substituted as the real

party-in-interest in any such actions commenced by or against the Debtor, the Bankruptcy Estate, or the Committee. The Reorganized Debtor shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Reorganized Debtor and collection; provided, however, that the Reorganized Debtor shall be authorized at any point in any litigation (a) to enter into such settlements as the Reorganized Debtor deem to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Reorganized Debtor deem such action to be in the best interest of creditors without Bankruptcy Court or other approval.

E.   Retention of Professionals.

The Reorganized Debtor may retain professionals on such terms as the Reorganized Debtor deems reasonable without Bankruptcy Court approval.

F.   Conditions to Effectiveness.

The Effective Date shall not occur until the entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtor and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however*, that if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, Debtor may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

Upon the satisfaction or waiver of the foregoing conditions, the Debtor shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become Effective without

further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein have been met.

        G.     <u>Exculpation from Liability</u>.

        The Debtor, the Reorganized Debtor, their respective members, Managers, officers, and directors, and their respective Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; provided, however, that this exculpation from liability provision shall not alter the terms of this Plan (and treatment of creditor claims therein) and shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party.  With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case.  The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the Reorganized Debtor, and their respective agents have or obtain pursuant to any provision of the Code or other applicable law, or any agreement.  This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.  Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan, and shall not modify or otherwise affect any other terms of this Plan

(including but not limited to the treatment of creditor claim).  The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION.  MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT ASSERTING ANY SUCH LIABILITY WITHIN THIRTY (30) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED.**

Notwithstanding the foregoing, (i) the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan and (ii) the Debtor's respective members, Manager or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

H.    Police Power.

Nothing in this Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

I.    Revocation and Withdrawal of this Plan.

The Debtor reserves the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order.  If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

J.    <u>Modification of Plan</u>.

The Debtor may seek to amend or modify this Plan in accordance with § 1127(b) of the Code, remedy any defect or omission, or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

K.    <u>Retention of Jurisdiction</u>.

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court. Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the

Effective Date may be paid by the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business without a Bankruptcy Court order; provided, further, however, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.      Any adversary proceedings or contested matters brought by Debtor or the Reorganized Debtor, the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Class 3 Claims;

4.      All controversies and disputes arising under or in connection with the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.     To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.    To hear and determine any action or controversy by or against the Reorganized Debtor.

L.    <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

M.    <u>Cramdown</u>.

The Debtor reserves the right to seek confirmation of this Plan under § 1129(b) of the Code.

N.    <u>Discharge</u>.

As of the Effective Date and pursuant to § 1141 of the Code, unless otherwise specified herein, the Debtor shall be discharged from any debt that arose before the Confirmation Date, and any debt of a kind specified in §§ 502(g), 502(h), and 502(i) of the Code, whether or not:

1.    A proof of claim based upon such debt is filed or deemed filed under § 501 of the Code;

2.    A Claim based upon such debt is allowed under § 502 of the Code; or

3.    The Holder of a Claim or Interest based upon such debt has accepted the Plan.

O.    <u>Notices</u>.

All notices required or permitted to be made in accordance with the Amended Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

Counsel for the Debtor:

R. Scott Shuker, Esq.
Jason H. Klein, Esq.
Latham, Shuker, Eden & Beaudine, LLP
111 E. Magnolia Avenue, Suite 1400
Orlando, Florida  32801

Debtor:

WSG Coral Springs, LP
c/o Eric Sheppard
PO Box  546918
Miami Beach, Florida 33181

United States Trustee:

Miriam Suarez, Esq.
George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida  32801

P.      Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor.

Q.      Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making Distributions shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Reorganized Debtor to the

appropriate authority.  If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below.  The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

       R.      <u>Transmittal of Distributions to Parties Entitled Thereto</u>.

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made.  Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

       S.      <u>Distribution of Unclaimed Property</u>.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date

shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Class 8 Claims in accordance with the provisions of this Plan.  However, checks issued by the Reorganized Debtor with respect to Allowed Class 8 Claims will be null and void if not cashed within sixty days of the date of issuance and revest in the Reorganized Debtor.  Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtor by the Holder of the Class 8 Claim with respect to the check originally issued.

      T.     <u>Transfer Taxes</u>.

      Under § 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.

      **RESPECTFULLY SUBMITTED** this 22nd day of March 2013 in Orlando, Florida.

/s/ R. Scott Shuker
**R. Scott Shuker, Esq.**
Florida Bar No.: 984469
rshuker@lseblaw.com
**Jason H. Klein, Esq.**
Florida Bar No.: 0016687
jklein@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32801
Tel:    407-481-5800; Fax:    407-481-5801
Secondary E-mail: bknotice@lseblaw.com
*Attorneys for the Debtor*